UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                        :

SONIA A. CLARKE,                           :

                          Plaintiff,     :

                             :           12 Civ. 2671 (JPO)

               -v-                :

                             :         <u>MEMORANDUM AND</u>

INTERCONTINENTAL HOTELS GROUPS,  :           <u>ORDER</u>

PLC, INTERCONTINENTAL HOTELS GROUP :

RESOURCES, INC., INTERCONTINENTAL  :

NEW YORK BARCLAY A/K/A          :

INTERCONTINENTAL THE BARCLAY NEW  :

YORK and BARCLAY OPERATING        :

CORPORATION,                    :

                             :

                    Defendants.  :

                             :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      Plaintiff Sonia A. Clarke brings this action against her former employers,

InterContinental Hotels Group, PLC ("IHG"), InterContinental Hotels Group Resources, Inc.

("IHGR"), Barclay Operating Corporation ("Barclay"), InterContinental New York Barclay a/k/a

Hotel Intercontinental New York ("INY") (collectively, "Defendants"), alleging violations of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Age

Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), the New York State

Human Rights Law, N.Y. Executive Law § 290, *et seq.* ("NYSHRL"), the New York City

Human Rights Law, N.Y.C. Administrative Code § 8–107, *et seq.* ("NYCHRL"), and the Fair

Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA").

      Defendants have moved to dismiss a substantial portion of Plaintiff's Amended

Complaint, on the grounds that (1) Plaintiff has failed to serve three of the Defendants in

compliance with Rule 4(m); (2) some or all of Plaintiff's discrimination claims are untimely; (3)

Plaintiff has failed to state claims for discrimination, retaliation, and/or workplace harassment under the ADEA, Title VII, NYCHRL, or NYSHRL.  Also before this Court is Plaintiff's motion for an extension of time to serve certain Defendants.

For the reasons that follow, Defendants' motion is granted in part and denied in part, and Plaintiff's motion for an extension of time is granted.

**I.      Background**

  **A.      Factual Background**

The following facts are taken from Plaintiff's Amended Complaint, and are presumed true, as they must be at this stage of the litigation.

    **1.      The Parties**

Sonia A. Clarke is a resident of the State of New York and resided in Bronx County at all times relevant to this action.  Clarke was born in Jamaica, West Indies, on May 2, 1949 and is 63 years old.  She is a black woman.

IHG is a corporation organized under the laws of the United Kingdom with its principal place of business in London.  IHGR is a corporation organized under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia.  IHGR is a wholly owned subsidiary of IHG and is a parent company of Barclay, a corporation organized under the laws of the State of New York with its principal place of business in New York City.  Barclay employed Clarke and paid her wages from approximately 1991 until her termination on July 2, 2010.  INY is a hotel located in New York City and is owned by IHG and/or IHGR and/or Barclay.  INY employed Clarke from 1991 until her termination on July 2, 2010.

    **2.      Clarke's Work History at IHG**

Clarke first began work for IHG in 1973 as a receptionist in the New York City Corporate Office.  Clarke later worked as a Sales Clerk and then a Reservations Agent.  She

resigned in 1988.  During her first 15 years of employment, Clarke suffered no maltreatment.

Clarke returned to work for IHG in 1991, working in the Sales and Marketing Department at the

Barclay.

<p align="center">**3.**      **The Working Environment in the Sales & Marketing Department**</p>

Clarke was the oldest person in the Sales and Marketing Department throughout her time

there.  Clarke was also the only black person for approximately 13 of the 15 years of her time in

the Department.

Clarke contends that she suffered a hostile work environment based on her race, color,

and age from approximately 1999 until her termination on July 2, 2010.  Deedee Aguilar, a direct

superior, would often scream at and demean Clarke.  On several occasions, Aguilar would yell at

Clarke to get back to her seat after a few minutes away (*e.g.* to get a cup of tea) while she would

not hold other employee to such strictures.  Aguilar would also follow Clarke into the bathroom,

presumably on suspicion that Clarke was avoiding work for non-legitimate reasons.  On another

occasion, Aguilar spoke to another employee about Clarke, saying "I don't know who the F she

thinks she is, she's just a secretary."

The Sales Managers snubbed Clarke, and, when they did speak to her, it was in a

condescending and discourteous manner.  Furthermore, Clarke was required to follow reporting

procedures to which other employees were not subjected.  For example, unlike other employees,

Clarke had to clear her vacation plans with everyone in the department and had to answer

questions about her specific plans (supervisors repeatedly asked if she was going to Jamaica).

Also, when she called in sick, Clarke was required to speak directly with David Shenman, the

Director of Group Sales, while other employees could simply leave voicemails.  Clarke was

issued a written warning in 2006 when she returned from jury duty because she had not called in

<p align="center">3</p>

every day her duty was ongoing, despite the absence of this requirement from the Employee Handbook.

Clarke complained on several occasions to Dan Costello, Director of Human Resources, and Lynda Whitaker, Assistant Director of Human Resources, about the demeaning treatment she received from others in her department.  Costello and Whitaker did not follow up on Clarke's complaints, despite Clarke's requests that they do so.

Clarke developed hypertension, allegedly as a result of her mistreatment at work, and began taking hypertension medications in 1999.  On November 1, 2004, Clarke fell ill in the subway from hypertension-related causes and was taken to the emergency room.  After spending one night in the hospital, Clarke had to miss one week of work and increase her medications.

Clarke always received performance evaluations throughout her 15 years in the Sales & Marketing Department that deemed her work satisfactory to exceptional.

**4.     Clarke Is Transferred to the Executive Office**

On or about December 4, 2006, Clarke began work as an Executive Office Administrative Assistant, which constituted a promotion and came with a small increase in pay. None of her co-workers in the Sales & Marketing Department wished her luck or said goodbye.

Clarke's salary in the Executive Office was $43,000 annually but she remained an hourly employee and had to sign a daily attendance sheet.  Clarke's predecessor, a younger white person, earned $56,000 annually, while another younger white person who began the same position in 2007 earned $48,000 annually.  Clarke asserts that her lower rate of hourly pay was attributable to her race, color, and age.

In March 2009, the executive whom Clarke had been assisting left and was not replaced. Clarke was then transferred back to the Sales & Marketing Department.

### 5.      Clarke Returns to Sales & Marketing and Is Terminated

Upon her return to the Sales & Marketing Department, Clarke was assigned to work as a Sales Coordinator, a position with substantially similar responsibilities to those she had previously had as a Sales Assistant.

Linda Hodgson, Director of Sales & Marketing, told Clarke in both a meeting and a subsequent email that her tasks would include administrative assistance to the entire department, the entire hotel, and full administrative support for Gabriela Ong, Sales Manager. Within a short time, Clarke was required to also provide full administrative support to Aguilar and Stephanie Caldwell while maintaining her full list of other administrative duties.

Sometime prior to her return in 2009, the Sales & Marketing Department had created a new position, Group Sales Associate, to which Sales Coordinators were promoted as a stepping-stone to becoming Sales Managers. From March 2009 until her termination in July 2010, Clarke saw IHG promote three younger, white Sales Coordinators to the Group Sales Associate position. Contrary to IHG policy, these position openings were not posted prior to the promotions. Clarke asserts that IHG promoted the other Sales Coordinators and not herself because of her race, color, and age.

After her return to the Sales & Marketing Department in March 2009, Clarke was subjected to condescending and rude treatment. Ong and Caldwell frequently told Clarke she was slow, had a poor memory, and took too long to complete tasks. When Clarke asked for clarification of tasks, Ong, Caldwell, and other Sales Managers would often tell her she should know how to complete the task because she had worked there a long time and would compare her unfavorably to her younger counterparts. On different occasions Ong, Caldwell, and other Sales Managers told Clarke she had "been here long enough."

On or about February 24, 2010, Shenman, Clarke, and a housekeeping attendant were inspecting a hotel suite when the suite's door accidentally locked all three inside. While they were waiting for a security employee to free them, Shenman sat on the couch and motioned to Clarke to bring him a drink from the mini-bar. Clarke felt Shenman was treating her as his servant. When the security employee, who was a black man, arrived, Shenman treated him rudely. The security employee later complained to IHG about the incident.

In October 2010, Mark Speranza became the Director of Sales & Marketing. Speranza, Shenman, Ong, and Caldwell then began pursuing a campaign to discipline and ultimately terminate Clarke. All four of these individuals are white and were in their early thirties at the time.

Shenman began issuing disciplinary warnings to Clarke, issuing five disciplinary warnings altogether, including one suspension. On one occasion, Clarke was disciplined for tardiness, despite having been asked to run an errand for a Sales Manager before coming to work, while other (young and white) coworkers were habitually tardy without reprimand. Shenman issued the first three warnings in two weeks and these were Clarke's first warnings in her 34 years with IHG.

On May 7, 2010, Shenman issued Clarke a Performance Management Action Plan ("the Plan"). The Plan contained extremely strict requirements, such as a "zero defects first time" standard and very rapid turnaround times for assignments. The Plan also required Clarke to undertake a long list of new responsibilities in addition to her existing duties. As a result, Clarke had to complete a larger number and greater variety of tasks than any other Sales Coordinator. Also as part of the Plan, Ong, Caldwell, and Shenman met with Clarke once a week for five weeks to review her performance. At each of these meetings, all three were highly critical of Clarke's performance, providing no praise whatsoever and no constructive guidance on how

Clarke could better perform her duties.  No other Sales Coordinators were subjected to such meetings.

On May 16, 2010, nine days after Shenman issued the Plan, Clarke wrote to Hervé Houdre, the General Manager, and complained that the Plan was issued because of discrimination against her on the basis of her age and race.  Houdre referred Clarke to Rob Blasi, IHG's Director of Human Resources, who criticized Clarke for writing such a "strongly worded letter."  Blasi then held a meeting with Speranza, Shenman, Ong, Caldwell, and Clarke, at the end of which Clarke was told that no discrimination had taken place.

On July 2, 2010, IHG fired Clarke.  Clarke contends that the disciplinary warnings and the Plan were part of a concerted effort by Speranza, Shenman, Ong, and Caldwell to create a pretense for her termination.  Clarke further contends that this effort was the result of discrimination against her on the basis of her race, color and age.

After IHG fired Clarke, IHG also fired Shenman.  Shenman had issued invitations to Ong's baby shower and had excluded three black female employees from the list of invitees.  Shenman was suspended and ultimately terminated for this incident.

### 6.   Clarke's Wages

On December 16, 2004, Clarke was formally classified by IHG as a non-exempt employee.  During Clarke's time in the Executive Office (2006-2009), IHG required Clarke to show forty hours of work each week regardless of whether she worked overtime hours.

During Clarke's time in the Sales & Marketing Department, IHG directed Clarke not to work more than forty hours per week.  Despite this instruction, Clarke did work overtime hours due to her large workload and the need for her to cover for Sales Managers during their absences.

With the exception of 3.5 hours in the spring of 2010, IHG did not pay Clarke anything for any of the hours she worked in excess of forty hours in a given week.

### B.    Procedural History

Plaintiff filed a charge with the United States Equal Opportunity Commission ("the EEOC") on March 4, 2011.  The EEOC issued Clarke a Dismissal and Notice of Rights letter on December 29, 2011 (Dkt. No. 1, Ex. A.), which she received on January 7, 2012 and her counsel received on January 9, 2012.

Plaintiff commenced this action on April 5, 2012.  (Dkt. No. 1.)  She mailed a copy of the Summons (individually addressed), the Complaint, and two Waivers of Service to each of the four Defendants on or about July 11, 2012.  Only Barclay signed and returned the Waiver of Service.  (Dkt. No. 21.)

Plaintiff amended the Complaint on October 23, 2012.  (Dkt. No. 14 ("Am. Compl.").)  Defendants filed a motion to dismiss the Amended Complaint on November 27, 2012.  (Dkt. No. 16 ("Defs.' Mem.").)  Plaintiff opposed on January 29, 2013.  (Dkt. No. 25 ("Pl.'s Opp'n.").)  On that same day, Plaintiff filed a motion for extension of time to serve certain defendants.  (Dkt. No. 24 ("Pl.'s Mem.").)    On February 19, 2013, Defendants replied and opposed the motion for an extension to time to serve.  (Dkt. No. 25 ("Defs.' Rep.").)[1]

## III.    Failure to Comply with Rule 4(m)

Defendants have moved to dismiss this action as to INY, IHGR, and IHG pursuant to Rule 12(b)(5) for failure to comply with Rule 4(m); Plaintiff has cross-moved to extend her time to serve INY and IHGR under Rule 4(m), noting that, should the Court decide not to do so, Plaintiff will be time barred from re-filing her suit.

"Federal Rule of Civil Procedure 4(m) governs both (1) the dismissal of actions for untimely service of process and (2) extensions of the time in which service may be effected."

---

[1] Plaintiff purported to file a reply to Defendants' opposition on March 3, 2013.  (Dkt. No. 29.) However, Plaintiff in fact filed another copy of her original memorandum of law.

*Zapata v. City of New York*, 502 F.3d 192, 195 (2d Cir. 2007).  Rule 4(m) provides in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the court—on a motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Courts have the discretion to grant extensions even in the absence of good cause. *Zapata*, 502 F.3d at 196; *see also Gerena v. Korb*, 617 F.3d 197, 201 (2d Cir. 2010) ("We have interpreted this rule to give wide latitude to courts in deciding when to grant extensions on time to serve, including permitting courts to grant extensions even absent good cause.").  In determining whether an extension should be granted when good cause is lacking, courts in this district look to four factors: "(1) whether any applicable statutes of limitations would bar the action once re-filed; (2) whether the defendant[s] had actual notice of the claims asserted in the complaint; (3) whether defendant[s] attempted to conceal the defect in service; and (4) whether defendant[s] would be prejudiced by extending plaintiff's time for service." *DeLuca v. AccessIT Grp.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010) (collecting cases).

The Court agrees with Plaintiff that, in this instance, dismissing the action for failure to serve would be unduly harsh.  As both parties note, were the Court to dismiss this case without prejudice, Plaintiff's action would be time-barred under both the ADEA and Title VII.[2] Moreover, Defendants have not indicated that they will be prejudiced by an extension of time to serve.  Finally, Plaintiff has demonstrated that all Defendants had actual notice of the action, as they have joined the motion to dismiss Plaintiff's Amended Complaint.  Taken together, these

---

[2] The advisory committee notes to the Federal Rules of Civil Procedure indicate that the drafters intended district courts to grant extensions in just this situation: "Relief may be justified, for example, if the applicable statute of limitations would bar the re-filed action."  Fed. R. Civ. P. 4, Advisory Committee Note to 1993 Amendments, Subdivision (m).

facts warrant permitting Plaintiff another opportunity to serve. *See Cantone & Co., Inc. v. Seafrigo*, No. 07 Civ. 6602 (PKL), 2010 WL 1488014 at *5 (S.D.N.Y. Apr. 12, 2010) (holding that "a discretionary extension of time to serve a summons and complaint on [a defendant] is warranted" when "[t]he parties do not dispute that the applicable statute of limitations would bar this action from being refiled," and "[the defendant] had actual notice of the claims in the complaint," and ultimately "[the defendant] has not demonstrated how it would be prejudiced by extending [the plaintiff's] time for service"); *see also Reese v. Univ. of Rochester*, No. 04 Civ. 6117, 2005 WL 1458632 at *2 (W.D.N.Y. June 20, 2005) (granting a discretionary extension of time to serve a defendant absent good cause, as the plaintiff "would be unable to maintain her action because the statute of limitations . . . would have run" and the "defendant will suffer little, if any, prejudice as a result of the delay in service" (internal citation omitted)).

Accordingly, Plaintiff's motion for addition time to serve INY and IHGR is granted. Plaintiff will be given 60 days to properly serve these Defendants.[3]

## III.    Defendants' Motion to Dismiss Pursuant to 12(b)(6)

Defendants have moved to dismiss Plaintiff's Title VII, ADEA, NYCHRL, and NYSHRL claims, on the grounds that the claims are time barred and for failure to state a claim under Rule 12(b)(6).[4]

### A.    Standard of Review

As a general rule, when deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court is obliged to "accept as true all of the factual allegations contained in the complaint," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007), drawing "all

---

[3] Plaintiff has not moved for additional time to serve IHG.   Thus, Defendant's motion to dismiss for lack of service and lack of personal jurisdiction is granted as to IHG.

[4] Defendants have not moved to dismiss Plaintiff's claims for overtime wages (Counts Five, Six, and Seven).

inferences in the light most favorable to the non-moving party's favor." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). On the other hand, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly,* 550 U.S. at 555 (noting that a court is "not bound to accept as true a legal conclusion couched as a factual allegation" (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986))). Courts deciding motions to dismiss are "not limited to the face of the complaint," but "may [also] consider," *inter alia*, "any written instrument attached to the complaint [or] statements or documents incorporated into the complaint by reference . . . ." *In re Scottish*, 524 F. Supp. 2d 370, 382 (S.D.N.Y. 2007) (quotation marks and citations omitted).

While Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a plaintiff must state "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level'" in order to avoid dismissal. *ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 546); *see also Iqbal*, 556 U.S. at 678-79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). In other words, to survive a motion to dismiss, a plaintiff's facts must give rise to a plausible narrative supporting her claim. *See Twombly*, 550 U.S. at 570 ("Here, in contrast, we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

The Second Circuit has held that "the pleading requirements in discrimination cases are very lenient, even *de minimis.*" *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)). In suits "alleging employment discrimination or retaliation," a plaintiff is "not required to plead facts sufficient to establish a *prima facie* case." *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 515 (2002)). "Rather, the ordinary rules for assessing the sufficiency of a complaint under Federal Rule of Civil Procedure 8(a)'s notice pleading standard appl[y] . . . [and] require[] only a short and plain statement of the claim with sufficient factual heft to sho[w] that the pleader is entitled to relief." *Mandavia v. Columbia Univ.*, No. 12 Civ. 2188 (JPO), 2012 WL 6186828, at *6 (S.D.N.Y. Dec. 12, 2012) (quoting *Swierkiewicz*, 534 U.S. at 512); *see also Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010). Thus*,* "a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, 'the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim.'" *Id.* (quoting *Fowler v. Scores Holding Co.,* 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009)).

### B.     Timeliness

Defendants argue that Clarke's claims, insofar as they involve events occurring prior to the limitations period, must be dismissed as time barred. Clarke, in return, argues that all complained-of acts are actionable, either as discrete discriminatory occurrences or as part of her hostile work environment claim.

### 1.     Discrimination Claims under ADEA and Title VII

Title VII and ADEA require that a charge be filed with the EEOC within 300 days of the allegedly discriminatory act. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 626(d)(2), 633(b); *accord Palummo v. St. Vincent's Med. Ctr.*, 4 F. App'x 99, 101 n.1 (2d Cir. 2001) ("Under the ADEA, if

12

the state in which the alleged discrimination occurred has a law prohibiting age discrimination and authorizing a state agency to enforce that law, as New York does, then the plaintiff must file a charge with the EEOC within 300 days of the allegedly discriminatory act" (citing *Brodsky v. City University of New York*, 56 F.3d 8, 9 (2d Cir. 1995)).  After a complainant has received a right-to-sue letter, she then has 90 days to file her action in federal court.  *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996).[5]

In some instances, courts conclude that discriminatory acts constitute "continuing violations," in which case the statute of limitations period may be extended beyond the 300-day limitations period.  *See Valrchev v. City of New York*, 400 F. App'x 586, 588 (2d Cir. 2000) ("An exception exists for claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination.  The continuing violation doctrine applies 'to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists.'" (citation omitted)).  The continuing violation doctrine, however, has been circumscribed by the Supreme Court in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  *Morgan* concerned an electrician employed by Amtrak, who alleged that, over his five-year period of employment, he was subject to various discriminatory acts, including denial of training opportunities, wrongful suspensions, and termination.  Reversing the Ninth Circuit, the Supreme Court held that each "discrete discriminatory act[]" falling outside the 300-day limitations period was not actionable, even if it was related to discriminatory acts that were not time barred.  *Id.* at

---

[5] In contrast, the statute of limitations for NYSHRL and NYCHRL claims is three years, tolled for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter.  *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 680 (S.D.N.Y. 2012) (citing C.P.L.R. § 214; N.Y. City Admin. Code § 8–502(d); *Siddiqi v. N.Y.C. Health & Hosp. Corp.*, 572 F.Supp.2d 353, 373 (S.D.N.Y. 2008)); *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007).

113 ("Each discrete discriminatory act starts a new clock for filing charges alleging that act.").[6]
Under *Morgan*, each discrete discriminatory act must have occurred during the limitations period
and be independently discriminatory to be actionable.[7]

Plaintiff alleges that she filed her claim with the EEOC on March 4, 2011, meaning that
all discrete discriminatory acts that took place on or after May 8, 2010 are not time-barred.  Most
notably, the allegedly discriminatory and retaliatory termination, which occurred on July 2, 2010,
took place within the 300-day limitations period.  However, other discrete acts of discrimination
alleged by Plaintiff took place prior to May 8, 2012, the 300-day cutoff.  For example, the
issuance of the Plan occurred 302 days prior to Clarke's filing of the EEOC charge and therefore
cannot form the basis of an independent claim of discrimination or retaliation.  Moreover, the
continuing violation doctrine cannot salvage any claims of discrimination, because Plaintiff has
failed to allege a specific ongoing policy of discrimination.  *Valrchev*, 400 F. App'x at 588.[8]

In sum, to the extent that Plaintiff asserts claims concerning discrete instances of
discrimination that occurred before May 8, 2012, those claims are dismissed.  *Accord Dowrich-
Weeks v. Cooper Square Realty, Inc.*, No. 11 Civ. 5966 (DAB), 2012 WL 3826981, at *5
(S.D.N.Y. Sept. 4, 2012).

---

[6] However, *Morgan* does not "bar an employee from using the prior acts as background evidence
in support of a timely claim."  *Id.*

[7] Discrete discriminatory acts include those acts that are "easy to identify," including, *inter alia*,
"termination, failure to promote, denial of transfer, or refusal to hire."  *Id.* at 114.

[8] Moreover, Plaintiff did not "clearly assert [a] continuing violation in both the EEOC charge and
in the complaint."  *Stoner v. New York City Ballet Co.*, No. 99 Civ. 0196 (BSJ), 2001 WL
492430, at *8 (S.D.N.Y. May 8, 2001) (citing *Carrasco v. New York City Off-Track Betting
Corp.*, 858 F. Supp. 28, 31 (S.D.N.Y. 1994)).

### 2. Hostile Work Environment Claims

As *Morgan* makes clear, hostile environment claims "occur[] over a series of days or perhaps years" and are therefore "different in kind from discrete acts." 536 U.S. at 115 (citation omitted). Hostile work environment claims may therefore be based on events outside the statute of limitations period as long as (1) the acts occurring before the 300-day cutoff constitute "part of the same actionable hostile work environment practice," and (2) at least one act contributing to the claim occurs within the filing period. *Id.* at 120; *see also Id.* at 118 ("Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment."); *accord Sundaram v. Brookhaven Nat'l Laboratories*, 424 F. Supp. 2d 545, 561 (E.D.N.Y. 2006) ("A hostile work environment claim is also treated essentially as a continuing violation."); *Khadaroo v. New York Presbyterian*, No. 10 Civ. 1237 (CM) (RLE), 2012 WL 893180, at \*4 (S.D.N.Y. Mar. 15, 2012) (holding that "any 'discrete acts' of discrimination that took place more than 300 days before the [EEOC filing] are time-barred, unless the Court finds that all Defendant's acts, considered together, constituted a 'hostile work environment' and, therefore, a 'continuing violation' of Plaintiff's rights").[9]

---

[9] Defendants argue that hostile work environment claims can incorporate evidence from before the 300-day cutoff only if they fall within the "continuing violation" exception as outlined by the Second Circuit. This argument mistakenly conflates adverse employment action claims, to which the continuing violation doctrine applies, with hostile work environment claims, which are subject to their own rules. *See Tademy v. Union Pacific Corp.*, 614 F.3d 1132, 1153-54 (10th Cir. 2008) ("By characterizing hostile environment claims [as it did in *Morgan*], the Supreme Court 'essentially rejected' use of the continuing violation doctrine in hostile environment cases and 'simplified the law by allowing courts to view allegations of hostile work environment as a single unlawful employment practice.' . . . Thus, with regard to hostile environment claims the concept of a 'continuing violation' that has developed in analyzing claims alleging discrete acts of discrimination is inapposite." (citing *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002); *Jensen v. Henderson*, 315 F.3d 854, 859 (8th Cir. 2002) (emphasis added)); *see also*

Plaintiff has alleged that a hostile work environment existed until the day she was terminated.  Thus, to the extent that allegations of a hostile work environment pre- and post-statutory limitations period are sufficiently related such that "each act is part of the whole," *Morgan*, 536 U.S. at 118, the conduct occurring outside the 300-day cutoff must be considered as part of her claim.  At the very least, the conduct alleged to have been experienced by Plaintiff following her return to the Sales & Marketing Department in March 2009 is sufficiently related to constitute part of the same hostile work environment claim.[10]

---

*Patterson v. Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) (contrasting "the continuing violations exception," wherein "all claims of acts of discrimination under [an ongoing] policy will be timely even in they would be untimely standing alone," with a "claim of hostile work environment," which "is timely so long as one act contributing to the claim occurred within the statutory period; if it did, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability" (citations and internal quotation marks omitted)).

Moreover, *Morgan* makes clear that a plaintiff's hostile work environment claim can encompass discrete discriminatory acts, even if those acts would be time barred if pursued as separately as acts of discrimination.  The defendant in *Morgan* argued that hostile work environment claims should be governed by the test articulated by the Seventh Circuit in *Galloway v. General Motors Service Parts Operations*, 78 F.3d 1164 (1996), under which "recovery for conduct taking place outside the time period for filing a timely charge should be available only in hostile environment cases where the plaintiff reasonably did not know such conduct was discriminatory or where the discriminatory nature of such conduct is recognized as discriminatory only in light of later events."  *Morgan*, 536 U.S. at 116 n. 11.  The *Morgan* Court explicitly rejected the *Galloway* test.  *Id.*; *accord* 4 Lex K. Larson, Employment Discrimination §§ 72.08[4] (2d ed. 2012) ("[S]ome pre-*Morgan* courts held that continuing violation theory was not available when discriminatory acts occurring outside the limitations period were sufficient to put an employee on notice of actionable harassment; these cases are no longer good law." (footnote omitted)).

[10] The Court need not determine at this juncture whether the conduct that occurred during Plaintiff's first period in Sales and Marketing is sufficiently related to the timely hostile work environment claim.   In any event, even if the events of that period do not constitute part of the claim itself, they are likely nonetheless relevant to Plaintiff's claim.  *See McGullam v. Cedar Graphics*, 609 F.3d 70, 86 (2d Cir. 2010) (Calabresi, J., concurring) ("[A]lleged incidents that may not be considered for purposes of establishing liability for a hostile work environment, because they occurred outside the limitations period and were not sufficiently related to incidents within that period, nevertheless may be admissible and probative as background evidence to support a claim based on alleged conduct that falls within the limitations period." (citing *McGinest v.GTE Serv. Corp.*, 360 F.3d 1113, 1114, n.6 (9th Cir. 2004)).

C.       **Sufficiency of Plaintiff's Allegations**

1.       **ADEA and Title VII Adverse Actions**

To establish a *prima facie* case of discrimination under either the ADEA or Title VII, a

plaintiff must demonstrate that "(1) she was within the protected class; (2) she was qualified for

the position; (3) she was subject to an adverse employment action; and (4) the adverse action

occurred under circumstances giving rise to an inference of discrimination."  *Leibowitz v.*

*Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009); *accord Sommersett v. City of New York*, No. 09

Civ. 5916 (LTS) (KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011) (explaining that

"the elements [of a discrimination claim] provide an outline of what is necessary to render her

claims for relief plausible").

"A plaintiff sustains an adverse employment action if he or she endures a 'materially

adverse change' in the terms and conditions of employment."  *Galabya v. New York City Bd. of*

*Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted).  Materially adverse changes include,

*inter alia*, "a termination of employment, a demotion evidenced by a decrease in wage or salary,

a less distinguished title, a material loss of benefits, significantly diminished material

responsibilities, or other indices  . . . unique to a particular situation."  *Id* (citations omitted).

Plaintiff alleges several adverse employment actions that fall within the limitations

period: she was given a uniquely heavy workload, was excessively scrutinized, and was

thereafter terminated.[11]  She has also alleged sufficient facts to make plausible her claim that

these adverse actions were the result of animus based upon age and race.  For example, she

---

[11] "Increased or excessive scrutiny cannot, without more, support a Title VII discrimination
claim."  *Plahutnik v. Daikin Am., Inc.*, No. 10 Civ. 1071 (CS), 2012 WL 6108236, at *4
(S.D.N.Y. Dec. 6, 2012) (citing cases).  However, where, as here, an employee alleges that the
excessive scrutiny led to her termination, it may be considered part of an adverse action.  *Cf.*
*Stembridge v. City of New York*, 88 F. Supp. 2d 276, 283 (S.D.N.Y. 2000) (no actionable harm
where a "reprimand contained a warning that repetition of improper behavior could result in
disciplinary action but contained no indication of any planned discipline or further action").

alleges that she was generally treated differently from white employees and younger employees,
*see Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A showing of disparate
treatment . . . is a recognized method of raising an inference of discrimination for purposes of
making out a *prima facie* case."); that her supervisors criticized her work in a manner that could
be construed as ageist, *accord O'Reilly v. Marina Dodge, Inc.*, 435 Fed. App'x 8, 11-13 (2d Cir.
2011); and that a supervisor allegedly engaged in racist behavior, both before and after Plaintiff's
termination, *see Zubalake v. USB Warburg LLC*, 382 F. Supp. 2d 536, 544 (S.D.N.Y. 2005)
(noting that "an employer's conduct tending to demonstrate hostility towards a certain group is
. . . relevant . . . where the employer's general hostility towards that group is the true reason
behind firing an employee who is a member of that group" (quoting *Heyne v. Caruso*, 69 F.3d
1475, 1479 (9th Cir. 1995)).

Thus, Plaintiff's discrimination claims survive under both the ADEA and Title VII.

### 2.    Retaliation

"To set forth a *prima facie* case of retaliation under Title VII, a plaintiff must show that:
(1) she engaged in a protected activity; (2) the employer was aware of that activity; (3) the
employee suffered an adverse employment action; and (4) a causal connection existed between
the protected activity and the adverse action." *McCormick v. Donovan,* 365 Fed. Appx. 247, 249
(2d Cir. 2010) (citation omitted).

Defendant argues that Plaintiff has failed to adequately plead a causal connection
between her protected activity and her termination.  Initially, it is worth noting that some courts
in this Circuit have denied motions to dismiss even where *no* evidence of causal connection has
been alleged.  *See, e.g.*, *Doroz v. Tect Utica Corp.*, 12 Civ. 391, 2013 WL 316614, at *5
(N.D.N.Y. Jan. 28, 2013) (denying motion to dismiss retaliation claim even where "plaintiff does
not identify whether defendant was aware of plaintiff's protected activity nor does [] he allege a

causal connection between the protected activity and the alleged adverse employment action," as "plaintiff's complaint provides defendant with fair notice of his retaliation claim" (citing *Jordan v. Potter*, No. 12 Civ. 391, 2007 WL 952070, at *7-8 (E.D.N.Y. Mar. 29, 2007)).  In any event, Plaintiff has pleaded sufficient facts to indicate a causal connection: Plaintiff pleaded that her termination took place only a month and a half after Plaintiff made her complaint to Houdre, and that her complaint was received with chilliness by IGH's Director of Human Resources.  These allegations suffice at this stage of the litigation.

### 3.      Hostile Work Environment

To state a hostile work environment claim under Title VII, a plaintiff must allege

> conduct (1) that is 'objectively' severe or pervasive—that is, [conduct that] creates an environment that a reasonable person would find hostile or abusive [the 'objective' requirement], (2) that the plaintiff 'subjectively perceive[s] as hostile or abusive' [the 'subjective' requirement], and (3) that creates such an environment because of plaintiff's sex (or other characteristic protected by Title VII) [the 'prohibited causal factor' requirement].

*Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001) (citations omitted); *see also Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (standards for claims of hostile work environment under the ADEA and Title VII are the same).  "Once a plaintiff has established the existence of a hostile workplace, she must then demonstrate that the harassing conduct which created the hostile situation should be imputed to the employer."  *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998) (internal quotation marks and citation omitted).

The Second Circuit has explained that:

> The matter of whether the conduct alleged was so "severe or pervasive" as to create "an objectively hostile or abusive work environment," is to be decided based on the totality of the circumstances, in light of such factors as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance."

*Patterson,* 375 F.3d at 227 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)); *see also Kassner*, 496 F.3d at 240 ("An actionable discrimination claim based on hostile work environment under the ADEA is one for which 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment.'" (citation omitted)).   A plaintiff can establish a hostile work environment claim by demonstrating "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (citation and quotation marks omitted).  However, a hostile work environment claim cannot be used to impose a "general civility code" in the workplace.  *McGullam*, 609 F.3d at 76 (quoting *Burlington N. & Santa Fe. Ry. Co v. White*, 548 U.S. 53, 68 (2006)).

The facts alleged by Plaintiff fall short of a claim for a hostile work environment under Title VII or the ADEA.  Plaintiff has alleged that during the entirety of her time in the Sales & Marketing Department, her supervisors snubbed her; spoke to her rudely to her and insulted her worth ethic; excessively scrutinized her work; and gave her more work to do than other employees.  Standing alone, these allegations do not plausibly point to a work environment that is sufficiently abusive to constitute a hostile workplace.  *Compare Trachtenberg v. Dep't of Educ. of City of New York*, No. 12 Civ. 7964  (PAE), 2013 WL 1335651, at *9-10 (S.D.N.Y. Apr. 3, 2013) (dismissing hostile work environment claim where plaintiff alleged that for two years she was subject to excessive scrutiny, received negative performance evaluations based on scurrilous charges, was placed in a bad office, and was refused training opportunities); *Parekh v. Swissport Cargo Servs., Inc.*, No. 08 Civ. 1994 (CPS), 2009 WL 290465, at *5 (E.D.N.Y. Feb. 5, 2009) ("Plaintiff's complaints concerning unfair disciplinary actions, shift changes, reduction in

manpower, wrongfully withheld vacation time, failure to provide him with proper equipment, workplace transfers, failure to promote, and his termination" together do not constitute a hostile work environment claim); *Murray-Dahnir v. Loews Corp.*, No. 99 Civ. 9057 (LLM), 1999 WL 639699, at *4 (S.D.N.Y. Aug 23, 1999) (plaintiff failed to state a claim for race-based hostile work environment where, unlike non-African American managers, he was required to work extra hours without proper support, his supervisor ceased direct communication with him and admonished him publicly and unjustifiably on numerous occasions, and he received an illegitimate critical memo); *with Kassner,* 496 F.3d at 240-41 (reversing district court that dismissed hostile work environment claim for failure to state a claim where first plaintiff alleged being subjected to "repeated" and "degrading" comments including "drop dead," "retire early," "take off all of that make-up," and "take off your wig"; affirming district court's dismissal of claims of second plaintiff who alleged only "pressure" to "retire from employment"); *La Grande v. DeCrescente Distrib. Co., Inc.*, 370 Fed. Appx. 206, 210-11 (2d Cir. 2010) (plaintiff stated a claim for hostile work environment based on race where employee made racial comments and where a manager threatened him and called him "nigger").

Because Plaintiff has failed to plead an objectively hostile or abusive environment, her hostile work environment claim does not survive under either the ADEA or Title VII.

### 4.    NYCHRL and NYSHRL Claims

Discrimination claims brought under the NYSHRL are analyzed under the same standard as those brought under ADEA and Title VII.  *See Shortt v. Congregation KTI*, No. 10 Civ. 2237 (ER), 2013 WL 142010, at *8 n.10 (S.D.N.Y. Jan. 9, 2013).[12]  In contrast, "the NYCHRL requires an independent analysis."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 2013 WL

---

[12] However, because the NYSHRL provides for a longer statute of limitations than the federal antidiscrimination statutes, Plaintiff may potentially have additional discrimination claims under the NYSHRL.

1776643, at *4 (2d Cir. Apr. 26, 2013); *see also id.* at *5 (noting that, pursuant to the 2005 amendments to the NYCHRL, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims").

Under the NYCHRL, there are not separate standards for "discrimination" and "harassment" claims; rather, "there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based, inter alia, on gender." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012) (citing (Administrative Code § 8–107[1][a])).  In *Mihalik*, the Second Circuit, adopting the reasoning of the First Department in *Williams v. N.Y. City Housing Authority*, 61 A.D.3d 62 (1st Dept 2009), held that, "[t]o establish a [] discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her [protected status]."  2013 WL 1776643, at *5 (internal quotation marks and citation omitted).  In other words, a plaintiff proceeding under the NYCHRL need not demonstrate either that her employer's conduct was "sever[e] and pervasive[]," nor even that she was subject to discrete, "tangible" adverse events.  *Id*.  Plaintiff's Complaint plausibly alleges that she "she has been treated less well than other employees."  Moreover, for the reasons set forth above, she has adequately alleged that her mistreatment was the result of her age, race, and/or gender.

Thus, Plaintiff's claims for discrimination and retaliation survive under the NYSHRL, while her claim survives in full under the NYCHRL.[13]

---

[13] Under the NYCHRL, federal civil rights laws are "a floor below which the City's Human Rights law cannot fall, rather than a ceiling about which the local law cannot rise."  N.Y.C. Local Law No. 85 of 2005, at Section 1 (Oct. 3, 2005).  Thus, the Court can conclude, without further analysis, that Plaintiff's retaliation claim under the NYCHRL also survives Defendants' motion to dismiss.  *See* section III.C.2, *supra*.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claims against IHG are dismissed in their entirety. Plaintiff's Title VII, ADEA, NYCHRL, and NYSHRL claims are dismissed to the extent that they are time barred pursuant to this ruling. Plaintiff's Title VII, ADEA, and NYSHRL claims are also dismissed to the extent that they purport to state a claim for hostile work environment. Otherwise, Defendant's motion is denied.

Plaintiff's motion for an extension of time to serve certain Defendants is GRANTED. Plaintiff is hereby given 60 days from the date of this Order to properly serve INY and IHGR. Otherwise, her claims against those Defendants shall be dismissed.

The Clerk of the Court is directed to close the motions at Docket Numbers 8, 15, and 22.

SO ORDERED.

Dated: New York, New York
May 30, 2013

J. PAUL OETKEN
United States District Judge